Herring *et al.*, *vs.* Rogers *et al.*

---

## HERRING *et al.*, *vs.* ROGERS *et al.*

1. A new trial will not be granted on account of the admission in evidence of a copy deed without proof of the correctness of the copy and without proof of the execution of the original, when the paper is produced under notice by the party against whom it is read, and it appears from the history of the trial that he claimed under it.

2. An estate to one during her life, and after her death to/be *equally divided* between the heirs of her body, is not an estate-tail, but an estate for life, with remainder to the children of the first taker.

3. When a jury decides that a plaintiff in trover is entitled to recover, it is proper that their verdict should be for that which both parties in open Court have acknowledged to be an agreed substitute for the property, instead of for the property itself.

Motion for New Trial, from Sumter county.    Tried before Judge ALLEN, April Adjourned Term, 1859.

Matthew G. Hodges and his wife Elizabeth, formerly Elizabeth E. Herring, Mary J. Herring, Haywood Herring and Woodberry Herring, minors, suing by their next friend, Mat-

thew G. Hodges, brought their action of complaint against John B. Herring for the recovery of five certain slaves.

On the trial, plaintiffs proved by one Rooks the value of the negroes sued for and their hire; that defendant was in possession at the time the suit was brought, and that defendant had claimed them as his a short time before suit was brought; also, that plaintiffs were the children of Herring's first wife, who was a Miss Moore, who died before 1850, in North Carolina, and that Herring married again before that year.

Rooks was asked if he had ever seen a deed from plaintiff's grandfather to the negroes in dispute? He answered, he had. He was asked its contents. Objection being made thereto, plaintiffs proved that they had given Herring notice to produce the deed. Rooks then stated Herring had several years before read over to him a deed then in Herring's possession, giving certain negroes to plaintiffs' mother for life, and to her children at her death. Defendant then produced a paper, which was read over to the witness by plaintiffs' counsel. The witness then testified that the paper read was, in substance, the same that was read over to him by defendant, as stated; that it read like it, and he believed it was a copy of the same paper. Thereupon, the Court permitted the paper to be read to the jury—not, however, by virtue of its certificate, but as secondary evidence of the contents of the alleged original deed, defendant's counsel objecting thereto. Rooks further proved, that the negroes sued for were the children of Clara.

Bruner, introduced by plaintiffs, proved that he was the Ordinary of said county, and that defendant came to him before this suit was brought and asked his advice about taking out letters of guardianship for his, defendant's, children, stating that the negroes were, or had been, levied on by a *fi. fa.* against him, and that they belonged to his, defendant's, wife and children under a deed of gift from some person not recollected.

The copy deed of gift referred to above purports to have been made by John R. Moore on the 13th day of January, in the year 1840, in New Hanover county, State of North Carolina, and that in consideration of the natural love and affection he has and bears for his daughter, Mary Herring, wife of John B. Herring, he gives and grants to her and to the

heirs of her body lawfully begotten of her, all and singular the following property: that. is to say, three negroes; one negro woman by the name of Clarisa, about sixteen years of age, etc., which he does consent and agree to give, grant and bequeath unto his beloved daughter, Mary Herring, during her natural life, and after her death to be equally divided between the heirs of her body lawfully begotten by her, which negroes he warrants and forever defends from himself and all other persons whatsoever, unto the said Mary Herring and to the heirs of her body, without any let or hindrance whatever.

It was admitted on the trial that the suit was settled as to the interest of said Hodges and wife by defendant's turning over Fanny, one of the negroes sued for, and agreeing to pay $200 00 of plaintiff's counsel fees.

There having been a verdict for the plaintiffs, counsel for defendant moved for a new trial, on a number of grounds, which motion was overruled by the Court.

The only grounds taken in the motion which were insisted on in this Court, are as follows:

1st. Because the Court erred in admitting the testimony of Rooks, and in allowing said copy deed to be read in evidence.

2d. Because the Court erred in charging the jury that said copy deed of gift created a life-estate in Mrs. Herring, with remainder to her children..

3d. Because the Court erred in charging the jury that Hodges and wife were entitled to recover the $200 00 which defendant agreed to pay towards plaintiff's counsel fees, if the jury enforce the settlement made between them and defendant.

LANIER & ANDERSON; BLANFORD, for plaintiffs in error.

McCAY & HAWKINS, *contra.*

*By the Court.*—STEPHENS, J., delivering the opinion.

1. We will not send this case back for a rehearing on account of the admission of the copy deed, for it appears to us, from the history of the trial, that it was produced by Herring himself under notice, and that he claimed under it.

This, as against him, was sufficient guaranty of the correctness of the copy and of the execution of the original. No man can complain that other people should be allowed to assume the genuineness and correctness of a paper which he himself treats as being entitled to full credit, when his treatment of it does not depend on the report of witnesses, but appears in open Court. Rooks' testimony as to the deed—the deed itself afterwards being in evidence—is wholly immaterial. It did no good and no harm.

2. We concur with the Court below in holding that this deed did not create an estate-tail, but did give a remainder to the children of Mrs. Herring. The property was to be hers during her life, and after her death, it was to be *equally divided* between the heirs of her body. This language indicates a division—but *one* division—and that one an *equal* division. When one equal division is made, the operation of the deed is *exhausted*. That one equal division being accomplished, the deed retires from the scene, and leaves the property forever afterwards just where that division places it. This is incompatible with an estate-tail. An estate-tail consists in a provision for the transmission of the property from generation to generation till the blood is exhausted, but this deed contemplates no control over the course which the property shall take after the *one* equal division. Again: The *equality* of the division is incompatible with an estate-tail. An estate-tail requires a division, or rather a *succession* of divisions to be made, not *per capita* among those who take as this deed does, but *per stirpes*. The phrase, " heirs of her body," from the technical meaning which the law has attached to it, would, if unexplained, import this succession of divisions among the successive generations *per stirpes*, but this deed shows that it contemplates but one division *per capita*, and that one must take place at the death of the first taker. There is no intention in it to control the transmission of the property from generation to generation, and therefore it creates no entailment. The provision is limited to *such* heirs of the body as may be in existence to take at that single, equal division.

3. The charge on the other point would have been better if it had been, that if the jury should find Hodges and his wife entitled to recover, they should give them, instead of their legal share, that which the parties had acknowledged in

Court to be an agreed substitute for that share. The *effect* of the charge upon the verdict was just this, although the charge was slightly different, and not correct. The error could not have hurt Herring, for the right charge would have produced the same result with a more inevitable certainty.

Judgment affirmed.